**MCELROY, DEUTSCH, MULVANEY, & CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
(973) 993-8100
Attorneys for Plaintiff,
Mark F. Durfee

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARK F. DURFEE,** | |
| **Plaintiff,** | **CIVIL ACTION NO.** |
| **vs.** | |
| **EQUINOX CAPITAL III, L.P., EQUINOX CAPITAL SBIC, L.P., EQUINOX PARTNERS III, LLC, EQUINOX SBIC PARTNERS, LLC, EQUINOX CAPITAL, INC., EQUINOX SMU MANAGEMENT, LLC, EQUINOX SMU PARTNERS, LLC, SMU HOLDINGS, INC, SMU ACQUISITION CORP., EQUINOX EIC MANAGEMENT LLC, EQUINOX EIC PARTNERS, LLC, EIC ACQUISITION CORP., EIC HOLDING, INC., EIC SMU ACQUISITION CORP. and STEVEN C. RODGER,** | **COMPLAINT AND JURY DEMAND** <br><br> <u>Document Electronically Filed</u> |
| **Defendants.** | |

Plaintiff Mark F. Durfee, by and through his attorneys, McElroy, Deutsch, Mulvaney &

Carpenter, LLP, by way of complaint against Defendants, Equinox Capital III, L.P., Equinox Capital

SBIC, L.P., Equinox Partners III, LLC, Equinox SBIC Partners III, LLC, Equinox Capital, Inc.,

Equinox SMU Management, LLC, Equinox SMU Partners, LLC, SMU Holdings, Inc., SMU

Acquisition Corp., Equinox EIC Management, LLC, Equinox EIC Partners, LLC, EIC Acquisition

Corp., EIC Holding, Inc., EIC SMU Acquisition Corp. and Steven C. Rodger, alleges and says:

## NATURE OF ACTION

1.      This action arises from the wrongful and unlawful actions taken against Plaintiff by Defendants to defraud Plaintiff and withhold certain investment interests, economic benefits and employment compensation and benefits that Plaintiff is rightfully and contractually entitled to.

2.      The Entity Defendants, as more fully set forth and defined below, were created for the purpose of establishing and managing a private equity fund and the particular investments made and carried out by that fund.

3.       Plaintiff was a member of and held certain other interests in the Entity Defendants that entitled him to a sharing percentage in the carried interest on every investment closed by the private equity fund and other economic benefits relating to those investments.

4.      Plaintiff was also an employee of one of the Entity Defendants pursuant to an employment agreement that entitled him to certain compensation and other benefits.

5.      Because of the wrongful and unlawful actions of Defendants, Plaintiff is entitled to, but has been denied, certain interests in and compensation from investments made by and through the Entity Defendants.  Plaintiff is now entitled to certain interests and due various forms of compensation relating to the following investments made by and through the Entity Defendants:  (i) Comprehensive NeuroScience, Inc. (the "CNS Investment"), (ii) St. Matthew's University, Inc. (the "SMU Investment"), and (iii) Saba University School of Medicine B.V. and the Medical University of the Americas Ltd. (the "SABA/MUA Investment").

6.      Plaintiff is also entitled to certain compensation, management fees and benefits that he was promised to induce him to accept employment with the Entity Defendants.

7.      Plaintiff brings this action seeking declaratory relief and money damages arising from the various breaches of contracts and fiduciary duties committed by Defendants to defraud Plaintiff

and wrongfully withhold from him certain interests in and compensation owed from investments made by and through the Entity Defendants and employment compensation and benefits that Plaintiff is rightfully and contractually entitled to.

## THE PARTIES

8.     Mark F. Durfee ("Durfee") is a natural person who currently resides at 717 Barrister Court, Franklin Lakes, New Jersey 07417.

9.     Equinox Capital III, L.P. (the "Parent Fund") is a limited partnership formed pursuant to the laws of the State of Delaware.  The Parent Fund currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

10.     Equinox Capital SBIC, L.P. (the "SBIC Fund") is a limited partnership formed pursuant to the laws of the State of Delaware.  The SBIC Fund currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

11.     Equinox Partners III, LLC ("Equinox Partners") is a limited liability company formed pursuant to the laws of the State of Delaware.  Equinox Partners currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

12.     Equinox SBIC Partners III, LLC ("SBIC Partners") is a limited liability company formed pursuant to the laws of the State of Delaware.  SBIC Partners currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

13.     Equinox Capital, Inc. ("Equinox Capital") is a corporation formed pursuant to the laws of the State of Delaware.  Equinox Capital has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.  Equinox Capital is the Manager of Equinox Partners pursuant to the Amended and Restated Operating Agreement of Equinox Partners (the "Operating Agreement").

14. Equinox SMU Management, LLC ("SMU Management") is a limited liability company formed pursuant to the laws of the State of Delaware. Upon information and belief, SMU Management currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

15. Upon information and belief, Equinox SMU Partners, LLC ("SMU Partners") is a limited liability company formed pursuant to the laws of the State of Delaware. Upon information and belief, SMU Partners currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

16. Upon information and belief, SMU Holdings, Inc. ("SMU Holdings") is a corporation formed pursuant to the laws of the State of Delaware. Upon information and belief, SMU Holdings currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

17. Upon information and belief, SMU Acquisition Corp. ("SMU Acquisition") is a corporation formed pursuant to the laws of the State of Delaware. Upon information and belief, SMU Acquisition currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

18. Equinox EIC Management, LLC ("EIC Management") is a limited liability company formed pursuant to the laws of the State of Delaware. Upon information and belief, EIC Management currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

19. Upon information and belief, Equinox EIC Partners, LLC ("EIC Partners") is a limited liability company formed pursuant to the laws of the State of Delaware. Upon information

and belief, EIC Partners currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

20.     Upon information and belief, EIC Acquisition Corp. ("EIC Acquisition") is a corporation formed pursuant to the laws of the State of Delaware.  Upon information and belief, EIC Acquisition currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

21.     Upon information and belief, EIC Holding, Inc. ("EIC Holding") is a corporation formed pursuant to the laws of the State of Delaware.  Upon information and belief, EIC Holding currently has its principal place of business located at 63 Walnut St., Gardner, Massachusetts, 01440.

22.     Upon information and belief, EIC SMU Acquisition Corp. ("EIC/SMU Acquisition") is a corporation formed pursuant to the laws of the State of Delaware.  Upon information and belief, EIC/SMU Acquisition currently has its principal place of business located at 41 West Putnam Avenue, Greenwich, Connecticut 06830.

23.     Steven C. Rodger ("Rodger") is a natural person who currently resides at 623 Lake Avenue, Greenwich, Connecticut 06830.

24.     The Parent Fund, the SBIC Fund, Equinox Partners, SBIC Partners, Equinox Capital, SMU Management, SMU Partners, SMU Holdings, SMU Acquisition, EIC Management, EIC Partners, EIC Acquisition, EIC Holding, EIC/SMU Acquisition are sometimes collectively referred to as the "Entity Defendants."

## JURISDICTION AND VENUE

25.     This Court has jurisdiction of and over the subject matter of this action pursuant to 28 U.S.C. §1332 in that it is wholly between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

26.     Venue in this district is proper pursuant to 28 U.S.C. §1391(a).

## BACKGROUND

27.     Durfee is a private equity investor with more than twenty-three years of experience. Prior to joining the Equinox entities in the positions and capacities set forth in more detail below, Durfee was involved in the formation and management of several successful private equity funds.

28.     During the course of the management and operation of one of those funds, Durfee was introduced to Rodger, who was an employee of one of that fund's primary investors.

29.     Sometime thereafter, Durfee learned that Rodger had left his employment with the investor and was endeavoring to establish his own private equity fund.

30.     Over the course of the next several years, Durfee occasionally provided assistance to Rodger as he undertook the necessary steps to form and legally structure a private equity fund. Durfee, on several occasions and at the specific request of Rodger, offered Rodger the benefit of his developed expertise in the formation of private equity funds and even presented Rodger with a number of possible investments.

31.     Shortly after Rodger formed the SBIC fund in or about November 2004, Rodger approached Durfee and asked that Durfee join his newly formed private equity fund as both an investor and to provide needed assistance in managing the fund and obtaining additional investors.

32.     To induce Durfee to join his newly formed private equity fund, Rodger assured Durfee that Durfee would be Rodger's partner in the fund and asked Durfee what it would take to

convince Durfee to join the venture.  In response, Durfee stated that he required a 35% interest in the fund.  To which, Rodger responded: "done."

33.     Based on the standard practices in the equity fund industry, as more fully set forth below, Durfee understood that he was being offered a 35% interest in all investments that would be carried out by the fund and he accepted Rodger's invitation to join the fund as both an investor and a partner based on this offer.

**The Equinox Fund**

34.     At all times, both prior to the investments and transactions at issue in this action and through the date of this Complaint, Durfee was a limited partner in Equinox Capital III, L.P. – the Parent Fund.  As a limited partner, Durfee's role was as a passive investor.

35.     Durfee is also a limited partner in Equinox Capital SBIC, L.P. - the SBIC Fund.

36.     Equinox Partners is the general partner of the Parent Fund and SBIC Partners is the general partner of the SBIC Fund.

37.     As is typical in the private equity industry, Equinox Partners was charged with making the investment decisions for the Parent Fund and SBIC Partners held a similar role on behalf of the SBIC Fund.

38.     Equinox Capital is an operating entity that manages Equinox Partners and SBIC Partners.  As is typical, Equinox Capital is the single operating entity, which has employees, office space and office equipment, and serves as the management company through which all day-to-day actions are taken on behalf of the funds.

39.     In essence, the Parent Fund, the SBIC Fund, Equinox Partners, SBIC Partners and Equinox Capital, collectively referred to as the "Equinox Fund Entities," operated in unison to form

and manage a private equity fund, which fund will be referenced as the "Equinox Fund" throughout this Complaint.

40.     A private equity fund is a type of active investment vehicle that raises capital from passive limited partners and invests that capital in private equity securities (*i.e.*, equity securities that are not publicly traded) of undervalued and growth companies.

41.     Under the terms of the relevant operating documents, all operations of the Equinox Fund were subject ultimately to the sole control of Rodger, the managing member of Equinox Partners and the President of Equinox Capital.

**Durfee Interests in Equinox Fund Entities**

Durfee Interest in Parent Fund and SBIC Fund

42.     As noted above, Durfee is a limited partner in the Parent Fund and SBIC Fund pursuant to separate Limited Partnership Agreements both dated March 1, 2004.

43.     In the private equity industry, limited partners make a "capital commitment" to the limited partnership of which they are members.  A capital commitment is a binding contract to provide funds to the limited partnership when "called" to do so.  Limited partners are committed up to a certain specified amount of money.  In other words, a capital commitment is an agreement to provide a certain amount of money to an entity when requested to do so by that entity at some future date.  A capital call is simply the request or "call" for those funds that were previously committed. Typically calls are for only a specific portion of the commitment – whatever is necessary to fund a particular transaction or to fund management fees – and not for the full amount of a commitment at any one time.  This structure of capital commitments and capital calls is utilized by the private equity industry so that funds are only delivered and tied up when investments are imminent.

44.     Here, Durfee made a capital commitment of $872,500 to the Parent Fund when he became a limited partner.

<u>Durfee Interest in Equinox Partners and SBIC Partners</u>

45.     In addition to his passive interests in the Equinox Fund through his interests in the Parent Fund and SBIC Fund, Durfee also holds interests in the certain Entity Defendants responsible for actively managing and overseeing the Equinox Fund and its investments.

46.     On or about December 15, 2004, Durfee became a member of Equinox Partners.

47.     On or about December 15, 2004, Durfee also became a member of SBIC Partners.

48.     Pursuant to the terms of the Equinox Partners Operating Agreement and the offer made by Rodger to induce Durfee to join the Equinox Fund, Durfee was afforded certain "carrying interests" in all investments made by the Equinox Fund.

49.     The relevant portions of the Operating Agreement state:

> **6.5   <u>Vesting</u>**.  Prior to the commencement of each [calendar year] (except the initial [calendar year] commencing on the date hereof and ending on December 31), the Investment Committee Chairman shall determine the Sharing Percentage of each Member with respect to all Investments to be made by the Partnership (and indirectly the SBIC Partnership) during such [calendar year] as may be adjusted during the course of the [calendar year] as a result of a Member becoming a Terminated Member or as a result of an admission of a new Member pursuant to Article 16 hereof.   The Sharing Percentages for each [calendar  year] shall be attached as an exhibit to this Agreement.
>
> (a)   The Sharing Percentage of each Member with respect to each Investment shall vest as follows:
>
>         (i)     fifteen percent (15%) of such Sharing Percentage shall vest on the last day of the [calendar year] in which such Investment is made;

(ii)      an additional twenty-five percent (25%) shall vest on the last day of the first calendar year subsequent to the [calendar year] in which such Investment is made; and

(iii)      an additional thirty percent (30%) shall vest on the last day of each of the second and third calendar years subsequent to the [calendar year] in which such investment is made;

*      *      *

(e)      Notwithstanding anything to the contrary provided in this Section 6.5, the unvested portion of the Sharing Percentage of a Member with respect to an Investment shall become fully vested upon the earliest to occur of (i) the discharge, other than for Cause, of such Member (ii) the death or permanent disability, as reasonably determined by the Investment Committee Chairman in its sole discretion, of such Member, and (iii) in such other instances as the Investment Committee Chairman in its sole discretion shall determine; provided, however, that no such acceleration of the vesting of the unvested portion of the Sharing Percentage of a Member shall occur in the event that such Member is terminated as an employee of the Manager for "Cause."

50.      Accordingly, as a member of Equinox Partners and SBIC Partners Durfee is entitled to receive a "sharing percentage" in the "carried interest" on every investment closed by the Equinox Fund.

51.      In private equity firms, the "carried interest" is the portion of the investment gain or other transaction profits realized that is allocated to the investment manager without the investment manager having made a cash investment.  In other words, the "carried interest" is one of the economic benefits provided to the investment manager as compensation for its role in overseeing the coordination, supervision and disposition of investments.

52.      It is a standard practice in the private equity industry that the individual members of a private equity entity receive their sharing percentage from the same carried interest.  In other words,

although individuals may receive different sharing percentages of the carried interest, each individual's sharing percentage is derived from the same pool of carried interest.

53.     Here, the agreement was that — in accordance with the industry standard and the offer made by Rodger to induce Durfee to join the Equinox Fund — Durfee would receive his sharing percentage in all investments carried out by or under the management of the Equinox Fund from the same carried interest as each of the other members of Equinox Partners — regardless of the specific entities created and utilized to pass along the carried interest.

54.     Pursuant to the Equinox Partners Operating Agreement and the offer made by Rodger to induce Durfee to join the Equinox Fund, Durfee's sharing percentage was 35% for all investments made by the Equinox Fund.

55.     Durfee's sharing percentage was subsequently reduced to 30.625% after Durfee agreed to sacrifice a portion of his sharing percentage to accommodate the addition of Bob Puopolo as an additional member of Equinox Partners.

Durfee Employment with Equinox Capital, Inc.

56.     On or about December 1, 2004, Durfee entered into an Employment Agreement with Equinox Capital.

57.     Pursuant to the terms of his Employment Agreement, Durfee was employed as a "senior executive" of Equinox Capital with the titles of "Principal," "Partner" or "Managing Director."  The Agreement imposes upon Durfee the following duties:

1.2     **Duties and Authority**.

(a)     Executive (Durfee) agrees to devote all of his working time and best efforts to the business of the Company, including without limitation (i) the day-to-day operations of the Company and the Fund (which is defined as the Parent Fund and the SBIC Fund) …. and (iii) seeking, analyzing, and recommending to the Investment Committee of the Company investment opportunities ….

58.     Pursuant to the terms of the Employment Agreement, Durfee was promised certain compensation and benefits to entice him to join the Equinox Fund.

59.     Durfee's compensation and benefits under the Employment Agreement include, without limitation, the following:

**2.1     Base Compensation and Benefits.**

(a)     **Salary**.     The Company shall pay Executive a base salary of up to $200,000 per year.  Such base salary will be determined by applying 67% of any management fees, net of any associated expenses, generated from limited partnership interests closed upon at the Parent Fund in excess of $11,705,000 up to a maximum base salary of $200,000.

\*          \*          \*

(e)  **Other Benefits.**   Executive shall be eligible to participate in all benefit plans now or hereafter offered to full-time employees of the Company, including, without limitation, pension or profit sharing plans, and Executive shall be entitled to participate in all health, dental, life or disability insurance plans made available to other full-time employees of the Company.

60.     The Employment Agreement provided for a term of one year, with automatic renewals for successive terms of one year each unless Equinox Capital delivered a notice of non-renewal prior to the termination of any term or renewal term or unless terminated in accordance with the terms of the agreement.

61.     The relevant portions of the Employment Agreement state:

**3.1     Term.**     The Term of the Agreement shall be from and after the Effective date until the end of such calendar year (the "Term").  The Term shall automatically renew for successive terms of one year each (a "Renewal Term"), unless the Company delivers notice of non-renewal prior to the expiration of Term or Renewal Term or unless otherwise terminated

under Section 3.2, upon the terms and conditions set forth in this Agreement, as such may be modified by mutual written agreement of the parties from time to time.

      **3.2**     **Events of Termination**.  Executive's employment shall terminate hereunder:

      (e)     effective upon the date set forth in [Equinox Capital's] written notice to Executive for "Cause."

      (i) For this purpose "Cause" means (A) material misconduct or dishonesty; (B) conduct of a criminal nature that may have an adverse impact on [Equinox Capital's] reputation and standing in the community; (C) fraudulent conduct in connection with the business affairs of [Equinox Capital]; (D) any bar against Executive from serving as a director, officer or employee of any firm the securities of which trade publicly or of any licensed SBIC; (E) material breach by Executive of his obligations, duties, and responsibilities under any term or provision of this Agreement; or (F) gross negligence or willful misconduct in the performance of Executive's duties hereunder.

      (ii)    [Equinox Capital] shall give Executive written notice of proposed termination under this Section 3.2(e) (the "Cause Notice"), which provides reasonable detail as to the cause and sets forth the date of a meeting of [Equinox Capital's] Board of Directors which date shall be no sooner than five days after the date on which the Cause Notice is given.  At such meeting, Executive will honor Requests by the Board of Directors at the meeting to leave the meeting to allow for discussion by the Board of Directors without Executive present.  At such time as the Board of Directors reach a decision with respect to Executive's termination, whether at the meeting set forth in the notice to Executive, or at a subsequent meeting, if the decision to terminate Executive is affirmed by the Board of Directors, Executive will be given written notice of such affirmation and Executive's employment will terminate on the date set forth in such notice.

      62.    The terms of Durfee's Employment Agreement, much like the terms of the Limited Partnership and Operating Agreements discussed above, make it clear that all of the Equinox Fund Entities and all members, partners and employees of those entities worked with the singular goal of seeking out and managing investments on behalf of the Equinox Fund.

**Durfee has fully performed under Equinox Fund Agreements**

63.     Durfee has fully performed all of his obligations pursuant to the Limited Partnership Agreements, the Operating Agreements and the Employment Agreement.

64.     From December 15, 2004 through August 14, 2007, Durfee devoted all of his business efforts to the business of the Equinox Fund as required by the Limited Partnership Agreements, Operating Agreements and the Employment Agreement, subject to the exceptions permitted thereunder.

65.     Durfee submitted to Rodger, as president of Equinox Capital and managing member of Equinox Partners, for consideration, all potential investment opportunities that Durfee considered to be potentially desirable investment transactions for the Equinox Fund.

66.     Durfee was also charged with conducting certain portions of necessary due diligence on potentially desirable investment transactions on behalf of the Equinox Fund.

67.     Durfee also sought out and brought in necessary additional outside investors in the Parent Fund, ultimately raising several millions of dollars of additional investment.

68.      Durfee also exerted substantial efforts to assist in the due diligence and closing of a number of rather significant and time consuming investments successfully completed by the Equinox Fund.

**The Equinox Fund Investments**

The CNS Investment

69.     CNS is an integrated clinical research and knowledge development company specializing in neuropsychiatric and related disorders.  CNS designs, implements and analyzes clinical development programs on behalf of pharmaceutical and biotechnology companies and contract research organizations.

70.     The Equinox Fund made an investment totaling $1,410,520 in CNS: $1,029,577 via Series C Convertible Preferred Stock, and $380,943 via Common Stock.

71.     The Equinox Fund closed the CNS Investment on or about November 18, 2004.

72.     The Equinox Fund Entities received a carried interest on the entire $1,410,520 of the CNS Investment.

73.     The members of Equinox Partners shared in the carried interest on the CNS Investment according to their respective sharing percentages in the Equinox Fund.

74.     Based on Durfee's sharing percentage of 30.625% in the Equinox Fund, Durfee was entitled to his sharing percentage of 30.625% of the Fund's $1,410,520 carried interest on the CNS Investment.

The SMU Investment

75.     St. Matthew's University, Inc. ("SMU") is a private, for-profit medical school located in the Cayman Islands, with its headquarters located in Orlando, Florida.

76.     In or about the spring of 2005, Bob Puopolo proposed SMU as a possible investment to the Equinox Fund (the "SMU Investment").

77.     After the Equinox Fund Entities conducted an analysis of the potential SMU Investment, the Equinox Fund Entities, on behalf of the Equinox Fund, entered into an agreement with Puopolo whereby Puopolo agreed to assign to the Equinox Fund Entities certain rights that he and a company controlled by him, Epic Partners II, LLC, had to purchase SMU.

78.     After many months of intensive and time consuming due diligence and preparations, the SMU Investment closed on or about January 27, 2006.

79.     Durfee, on behalf of the Equinox Fund Entities, conducted significant due diligence in connection with the SMU Investment.

80.     The significant costs incurred to complete the necessary due diligence and close on the SMU Investment were born by the Equinox Fund Entities.

81.     A complex structure of corporations, limited liability companies and limited partnerships was utilized by the Equinox Fund Entities to effectuate the SMU Investment.

82.     Upon information and belief, after the SMU Investment closed, 100% of St. Matthew's University, Inc.'s Common Stock was owned by SMU Holdings.   Equinox SMU Partners, LLC ("SMU Partners"), an entity managed by Equinox SMU Management LLC ("SMU Management") (the managing member of SMU Partners), which in turn was managed by Equinox Capital for the purpose of completing the Equinox Fund's investment in SMU, obtained an approximately 70-75% fully diluted interest in SMU Holdings.  Ultimately, SMU Partners held approximately 89.6% of the voting stock of SMU Holdings.

83.     The total equity investment in SMU engineered by the Equinox Fund Entities was $23.5 million.

84.     Of the $23.5 million invested, $19.5 million was funded by outside investors (including, York Capital Management, Ares Capital and Prairie Capital, as well as some of the limited partners or affiliates of limited partners in the Parent Fund) through SMU Management.

85.     Notwithstanding the significant due diligence efforts and costs borne by the Equinox Fund Entities at the direction of Rodger, Rodger specifically and improperly limited the Equinox Fund Entities to merely a $4 million investment in SMU.

86.     On or about January 27, 2006, Durfee was presented with a Limited Liability Company Agreement for SMU Management.

87.     The Limited Liability Company Agreement provides that Durfee has a 30.37% interest in SMU Management.  This percentage was roughly in line with Durfee's expectation that

– in accordance with the industry standard and the offer made by Rodger to induce Durfee to join the Equinox Fund, as set forth above – he would receive his 30.625% sharing percentage in all investments carried out by or under the management of the Equinox Fund regardless of the specific entities created and utilized to carry out the investment.

88.     Accordingly, Durfee was led to believe that he had properly been allocated his respective sharing percentage on the carried interest for the entire $23.5 million of the SMU Investment.

The SABA/MUA Investment

89.     Saba University School of Medicine ("SABA") is a for-profit medical school located in the Netherlands-Antilles. Medical University of the Americas Ltd. ("MUA") is for-profit medical school located in the Caribbean on the island of St. Kitts.

90.     As part of the Equinox Fund's investment in SMU, the Equinox Fund Entities and/or SMU Partners or SMU Management acquired the rights to certain actionable claims that SMU had against SABA and MUA.  Briefly stated, SMU's claims were based on significant damages suffered by SMU as a result of a number of fraudulent and intentional misrepresentations made by SABA and MUA and/or their agents for the purpose of defaming SMU and interfering with SMU's ability to receive necessary accreditation and attract students.

91.     The SMU lawsuit provided the Equinox Fund with a significant asset with which to negotiate a below market purchase price for SABA and MUA.

92.     Having the lawsuit to employ as significant leverage in negotiations, the Equinox Fund Entities eventually took steps to effect an investment in SABA/MUA (the "SABA/MUA Investment").

93.     After the Equinox Fund Entities conducted an analysis of the potential SABA/MUA Investment, the Equinox Fund Entities, on behalf of the Equinox Fund, eventually negotiated a deal to purchase SABA and MUA for a price well below the then current fair market value of the schools.

94.     After many months of intensive and time consuming due diligence and preparations, the SABA/MUA Investment closed on or about April 3, 2007.

95.     Unlike during the due diligence conducted on the SMU Investment, Durfee was largely excluded from participating in any of the due diligence or other preparations conducted in connection with the SABA/MUA Investment.

96.     The significant costs incurred to complete the necessary due diligence and close on the SABA/MUA Investment were again borne by the Equinox Fund Entities.

97.     A complex structure of corporations, limited liability companies and limited partnerships was again utilized by the Equinox Fund Entities, at the direction of Rodger, to effectuate the SABA/MUA Investment.

98.     The Equinox Fund Entities either created or acquired additional entities to effect the SABA/MUA Investment, including:  EIC Holding, Inc. ("EIC Holding"), Equinox EIC Partners LLC ("EIC Partners") and Equinox EIC Management LLC ("EIC Management") (collectively EIC Holding, EIC Partners and EIC Management are referred to as the "EIC Entities").

99.     The total equity investment in SABA/MUA engineered by the Equinox Fund Entities was $27 million, plus the litigation acquired by the Equinox Fund Entities in the SMU Investment.

100.    Of the $27 million invested, $24.5 million was funded by outside investors (York Capital Management, Ares Capital and Prairie Capital - the same principal outside financing sources involved in the SMU Investment) through the EIC Entities.

101.    Notwithstanding the significant due diligence efforts and costs borne by the Equinox Fund Entities at the direction of Rodger, Rodger again specifically and improperly limited the Equinox Fund Entities' investment in EIC.  In fact, Rodger further limited the Equinox Entities to only a $2.5 million investment in EIC.

102.    In or about March 2007, Durfee was presented with a capital call relating to his capital commitment in the Parent Fund.  In accordance with his obligations under the Parent Fund's Limited Partnership Agreement, Durfee promptly complied with the capital call and forwarded the requested investment of $200,351.00.

103.    On or about August 14, 2007, Durfee was presented with an Amended and Restated Limited Liability Company Agreement of EIC Management.

104.    Durfee was never provided a copy of the Original Limited Liability Company Agreement of EIC Management.

105.    The Amended and Restated Limited Liability Company Agreement provides that Durfee has only a 1.356% interest in EIC Management.

106.    This percentage interest is materially less than the sharing percentage that Durfee is entitled to in all investments carried out by or under the management of the Equinox Fund.

107.    Under the terms of the Equinox Fund Entity Agreements and in accordance with the offer made by Rodger to induce Durfee to join the Equinox Fund as set forth at length above, Durfee was still entitled to a sharing percentage of 30.625% in all investments carried out by the Equinox

Fund as of the close of the SABA/MUA Investment – regardless of the specific entities created and utilized by the Equinox Fund Entities to carry out the investment.

Proposed Separation Agreement

108.    On or about August 14, 2007, Durfee received a proposed Mutual Separation Agreement and Release (the "Separation Agreement") from Rodger.

109.    Pursuant to the proposed Separation Agreement, Rodger sought Durfee's resignation from all managerial positions and offices Durfee holds with the Parent Fund, Equinox Partners, the SBIC Fund, SBIC Partners, SMU Management, EIC Management and Equinox Capital.

110.    Rodger further sought, through the Separation Agreement, to extinguish Durfee's sharing percentage in all future investments to be carried out by the Equinox Fund.

111.    The Separation Agreement does not state that Durfee's resignation was being sought as a result of any violations or alleged violations of any of the terms of the Limited Partnership Agreements, the Operating Agreements or the Employment Agreement set forth at length throughout this Complaint.  Nor does the Separation Agreement set forth any other legal basis upon which Durfee's resignation from the listed entities was being sought.

112.    Durfee has never received a written "Cause Notice" or any other written or oral complaint related to any of the other items listed in the Employment Agreement justifying a for-cause termination of his interests or employment with the Parent Fund, Equinox Partners, the SBIC Fund, SBIC Partners, SMU Management, EIC Management and/or Equinox Capital.

113.    Durfee rejected and never executed the Separation Agreement.

114.    Notwithstanding Durfee's rejection of the Separation Agreement, Defendants, in violation of the terms of the Employment Agreement, cancelled Durfee's employment benefits as of

the proposed date set forth in the Separation Agreement and discontinued his salary after the unaccepted sum set forth in the Separation Agreement was paid.

    The SMU-SABA/MUA Consolidation

    115.    Shortly after receipt of the proposed Separation Agreement, Durfee learned that Rodger intended to carry out a consolidation of the SMU and SABA/MUA Investments.

    116.    Under the terms of the proposed consolidation as Durfee now understands them, SMU Partners had agreed to sell all of its shares of common stock in SMU to EIC Holding (or one of its subsidiaries or affiliates) at a price of $524.56 per share. Rodger apparently utilized his position of control over SMU Partners to enter this agreement without notifying or seeking approval of Durfee. The decision to move forward with this sale was made without consultation or agreement from Durfee.

    117.    Thereafter, Durfee, upon information and belief, has learned that a consolidation via a short-form merger between SMU and an entity called EIC SMU Acquisition Corp. was effected on September 21, 2007 (the "SMU-SABA/MUA Consolidation").

    118.    In effect, the SMU-SABA/MUA Consolidation was nothing more than a corporate reorganization – though accomplished through a textbook case of wrongful self-dealing. It was designed to misappropriate the vast majority of Durfee's economic rights. Prior to the consolidation, the Equinox Fund owned and controlled, through various entities, all of the common stock of SMU and also owned and controlled, through various entities, all of the common stock of SABA and MUA.

    119.    Further, upon information and belief, the purported "investors" involved in the SMU-SABA/MUA Consolidation "invested" almost exactly the amount that they were returned upon the closing of the SMU-SABA/MUA Consolidation – i.e., the "investments" were merely part of

Rodger's scheme to defraud Durfee and the "investment" funds were effectively passed through the SMU-SABA/MUA Consolidation.

120.     As the Equinox Fund Entities' ownership rights and control did not change as a result of the SMU-SABA/MUA Consolidation, the SMU-SABA/MUA Consolidation can only be understood as an effort to wrongfully interfere with and/or terminate Durfee's sharing percentage in the SMU Investment and the SABA/MUA Investment.  Indeed, the apparent elimination of Durfee (and a few other minority interests) was the only real change brought about by the SMU-SABA/MUA Consolidation. The Equinox Fund Entities, under the control of Rodger, retained ownership interests and control of SMU, SABA and MUA.

121.     Upon further information and belief, it is also believed that the SMU-SABA/MUA Consolidation was carried out to further minimize the already minimal investments that Rodger permitted the Parent Fund and SBIC Fund to make in the SMU Investment and the EIC Investment. Following the SMU-SABA/MUA Consolidation, it is believed that the Parent Fund and SBIC Fund have even a smaller invested interest in the investments for which they bore the majority of the due diligence efforts and costs.

122.     Accordingly, because the SMU-SABA/MUA Consolidation was nothing more than a corporate reorganization designed to wrongfully interfere with and/or terminate Durfee's economic rights in the SMU Investment and the SABA/MUA Investment, Durfee's economic rights should be deemed to continue in the new, combined entity – believed to be either EIC SMU Acquisition Corp. or EIC Holding – and he should be entitled to a sharing percentage of 30.625% of the carried interest in that entity held by any Equinox-affiliated entity or person.

**Durfee's Interests Going Forward**

123.     As stated above, Durfee rejected and never executed the Separation Agreement.

124.    Additionally, Durfee has never received a written "Cause Notice" or any other written or oral complaint related to any of the other items listed in the Employment Agreement justifying a for-cause termination.

125.    Since his rejection of the Separation Agreement, however, Durfee has received only limited information regarding the Equinox Fund Entities and the Investments and has been denied compensation and benefits that he is entitled to under the Employment Agreement.

126.    Durfee was recently provided K-1 schedules by Defendants' accountants purporting to set forth Durfee's interests in the Defendant Entities.

127.    Contrary to Durfee's rights and interests in the Equinox Fund and the investments made by and through the Fund as set forth in detail above, the tax schedules provided by Defendants fail to account for Durfee's full sharing percentage of 30.625% of the carried interest held by any Equinox-affiliated entity or person in the CNS Investment, the SMU Investment, the SABA/MUA Investment or the SMU-SABA/MUA Consolidation.

128.    Under the terms of the Limited Partnership Agreements and the Operating Agreements set forth at length throughout this Complaint, Durfee is due, and has been substantially denied, the following:

        a.    a 30.625% sharing percentage of the carried interest on the proceeds from the CNS Investment that will ultimately flow any Equinox entity or related party, including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants, and including, without Limitation, 30.625% of the carried interest on all equity portions of the Investment;

b.      a 30.625% sharing percentage of the carried interest on all aspects of the SMU

Investment that will ultimately flow to any Equinox entity or related party,

including, but not limited to, any returns received by Equinox Capital, the

Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox

Partners, or any other entity organized or controlled by Defendants, and

including, without limitation, 30.625% of the carried interest on all equity

portions of the investment, including, without limitation, the $4,000,000 and

$19,500,000 portions of the investment; and

c.      a 30.625% sharing percentage of the carried interest on the proceeds from the

SABA/MUA Investment that will ultimately flow to any Equinox entity or

related party, including, but not limited to, any returns received by Equinox

Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other

members of Equinox Partners, or any other entity organized or controlled by

Defendants, and including, without limitation, 30.625% of the carried interest

on all equity portions of the investment, including, without limitation, the

$2,500,000 and $24,500,000 portions of the investment.

129.    Under the terms of the Employment Agreement, Durfee is due, and has been

substantially denied the Base Compensation and Benefits he is entitled to pursuant to Paragraph 2.1

of the Employment Agreement.

130.    Because Durfee was not terminated in accordance with the terms of the Employment

Agreement, the term of his employment automatically renewed for another one year Renewal Term

on December 1, 2007, entitling Durfee to another year of Base Compensation and Benefits, in

addition to all back pay and benefits owed to Durfee as a result of Defendants' improper cancellation

of Durfee's employment benefits as of the proposed date set forth in the Separation Agreement and discontinuation of his salary after the unaccepted sum set forth in the Separation Agreement was paid.

131.    Additionally, because the SMU-SABA/MUA Consolidation was not an arms-length transaction, but instead merely a corporate reorganization that has not materially affected the Equinox Fund Entities' control of the underlying entities or their economic returns in the transaction (other than by prejudicing the economic rights of Durfee), Durfee is also due the following:

a.    a 30.625% sharing percentage of the carried interest on the proceeds from the SMU-SABA/MUA Consolidation that will ultimately flow to any Equinox entity or related party, including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants.

132.    In addition, Rodger's improper actions to limit the Parent Fund's and SBIC Fund's ability to invest in the SMU Investment and the EIC Investment and exclude the Parent Fund and SBIC Fund from further investing in the SMU-SABA/MUA Consolidation also greatly diminished the return on investment realized by all of the limited partners in the Parent Fund and SBIC Fund, including Durfee.

133.    The value of the sharing percentages, employment compensation and benefits and return on his limited partnership investment due to Durfee, once ultimately paid, is estimated to have a present value well in excess of $75,000.00.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment)

134.    Plaintiff repeats and realleges, with full force and validity, each and every allegations as set forth above in this Complaint as if set forth at length herein.

135.    Pursuant to the Limited Partnership and Operating Agreements and the offer made by Rodger to induce Durfee to join the Equinox Fund, Durfee is entitled to a full sharing percentage of 30.625% of the carried interest held by any Equinox-affiliated entity or person in all Equinox Fund Investments.

136.    Defendants' structuring of the Investments so as to deprive Durfee of the bargained for benefits owed him was a breach of the Limited Partnership and Operating Agreements.

137.    Defendants' refusal to acknowledge Durfee's entitlement to or pay Durfee the 30.625% sharing percentage of the carried interest due to him in connection with the entire CNS Investment, the entire SMU Investment, the entire SABA/MUA Investment, and the entire SMU-SABA/MUA Consolidation, pursuant to the terms of the Limited Partnership and Operating Agreements constitute a breach or an anticipatory breach of contract and a breach of the fiduciary duties that Durfee is owed pursuant to the Limited Partnership and Operating Agreements.

138.    A declaration of Plaintiff's 30.625% sharing percentage of the carried interest due to him in connection with the entire CNS Investment, the entire SMU Investment, the entire SABA/MUA Investment, and the entire SMU-SABA/MUA Consolidation would prevent any damages that Plaintiff will suffer by reason of the foregoing breaches or anticipatory breaches.

**WHEREFORE,** Plaintiff Mark F. Durfee demands a declaration that he is entitled to:

    a.    a 30.625% sharing percentage of the carried interest on the proceeds from the CNS Investment that will ultimately flow any Equinox entity or related party,

including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants, and including, without Limitation, 30.625% of the carried interest on all equity portions of the Investment;

b.     a 30.625% sharing percentage of the carried interest on all aspects of the SMU Investment that will ultimately flow to any Equinox entity or related party, including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants, and including, without limitation, 30.625% of the carried interest on all equity portions of the investment, including, without limitation, the $4,000,000 and $19,500,000 portions of the investment;

c.     a 30.625% sharing percentage of the carried interest on the proceeds from the SABA/MUA Investment that will ultimately flow to any Equinox entity or related party, including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants, and including, without limitation, 30.625% of the carried interest on all equity portions of the investment, including, without limitation, the $2,500,000 and $24,500,000 portions of the investment; and

d.     a 30.625% sharing percentage of the carried interest on the proceeds from the SMU-SABA/MUA Consolidation that will ultimately flow to any Equinox

entity or related party, including, but not limited to, any returns received by Equinox Capital, the Parent Fund, the SBIC Fund, Equinox Partners, the other members of Equinox Partners, or any other entity organized or controlled by Defendants.

## SECOND CAUSE OF ACTION
### (Breach of Contract as to Limited Partnership and Operating Agreements)

139.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

140.    Pursuant to the Limited Partnership and Operating Agreements and the offer made by Rodger to induce Durfee to join the Equinox Fund, Durfee is entitled to a full sharing percentage of 30.625% of the carried interest held by any Equinox-affiliated entity or person in all Equinox Fund Investments.

141.    Defendants' structuring of the Investments so as to deprive Durfee of the bargained for benefits owed him was a breach of the Limited Partnership and Operating Agreements.

142.    Defendants' refusal to acknowledge Durfee's entitlement to or pay Durfee the 30.625% sharing percentage of the carried interest due to him in connection with the entire CNS Investment, the entire SMU Investment, the entire SABA/MUA Investment, and the entire SMU-SABA/MUA Consolidation, pursuant to the terms of the Limited Partnership and Operating Agreements constitute a breach or an anticipatory breach of contract.

143.    By reason of the foregoing breaches and/or anticipatory breaches, Durfee has been damaged by being denied certain benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

**WHEREFORE**, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)     Compensatory and consequential damages in an amount to be determined at trial;

(b)     Punitive damages;

(c)     Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)     Such other relief as the Court may deem just, equitable and proper.

### THIRD CAUSE OF ACTION
**(Breach of Covenant of Good Faith and Fair Dealing
as to Limited Partnership and Operating Agreements)**

144.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

145.    The Limited Partnership and Operating Agreements include an implied covenant of good faith and fair dealing that neither party will do anything to impair the other party's right to enjoy the fruits of the Agreements.

146.    Defendants breached the implied covenant of good faith and fair dealing by failing to honor their obligations under the Limited Partnership and Operating Agreements in refusing to recognize and attempting to deprive Durfee of his full sharing percentage of 30.625% of the carried interest held by any Equinox-affiliated entity or person in all Equinox Fund Investments.

147.    Defendants' structuring of the Investments so as to deprive Durfee of the bargained for benefits owed him was a breach of the implied covenant of good faith and fair dealing contained in the Limited Partnership and Operating Agreements.

148.    Additionally, Defendants' refusal to acknowledge Durfee's entitlement to or pay Durfee the 30.625% sharing percentage of the carried interest due to him in connection with the entire CNS Investment, the entire SMU Investment, the entire SABA/MUA Investment, and the entire SMU-SABA/MUA Consolidation, pursuant to the terms of the Limited Partnership and

Operating Agreements also constitute a breach or an anticipatory breach of the implied covenant of good faith and fair dealing.

149.    By reason of the foregoing breaches and/or anticipatory breaches of the implied covenant of good faith and fair dealing contained in the Limited Partnership and Operating Agreements, Durfee has been damaged by being denied certain benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

**WHEREFORE**, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)    Compensatory and consequential damages in an amount to be determined at trial;

(b)    Punitive damages;

(c)    Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)    Such other relief as the Court may deem just, equitable and proper.

## FOURTH CAUSE OF ACTION
### (Breach of Contract as to Employment Agreement)

150.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

151.    Under the terms of his Employment Agreement, Durfee was due, and has been substantially denied certain base compensation and other benefits that he is entitled to.

152.    Defendants' termination and refusal to provide Durfee the base compensation and benefits that he is entitled to under the Employment Agreement constitute a breach of contract.

153.    Because Durfee was not terminated in accordance with the terms of the Employment Agreement, the term of his employment automatically renewed for another one year Renewal Term on December 1, 2007, entitling Durfee to at least another year of compensation and benefits.

154.    By reason of the foregoing breaches and/or anticipatory breaches, Durfee has been damaged by being denied certain benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

**WHEREFORE**, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)    Compensatory and consequential damages in an amount to be determined at trial;

(b)    Punitive damages;

(c)    Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)    Such other relief as the Court may deem just, equitable and proper.

### FIFTH CAUSE OF ACTION
#### (Breach of Covenant of Good Faith and Fair Dealing as to Employment Agreement)

155.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

156.    The Employment Agreement includes an implied covenant of good faith and fair dealing that neither party will do anything to impair the other party's right to enjoy the fruits of the Agreement.

157.    Defendants breached the implied covenant of good faith and fair dealing by failing to honor their obligations under the Employment Agreement by improperly terminating the Agreement and refusing to provide Plaintiff the base compensation and benefits that he is entitled to under the Employment Agreement.

158.    As a direct and proximate result of Defendants' breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged by being denied certain benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

1102611-1

31

**WHEREFORE**, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)     Compensatory and consequential damages in an amount to be determined at trial;

(b)     Punitive damages;

(c)     Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)     Such other relief as the Court may deem just, equitable and proper.

## SIXTH CAUSE OF ACTION
### (Breach of Fiduciary Duty as to LLC Interests)

159.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

160.    Rodger, as the controlling person at Equinox Partners and the Entity Defendants in general, owed Durfee fiduciary duties while he was a member of Equinox Partners and the other Entity Defendants.

161.    Defendants' structuring of the Investments so as to deprive Durfee of the bargained for benefits owed him was a breach of Rodger's fiduciary duties.

162.    Defendants' refusal to acknowledge Durfee's entitlement to or pay Durfee the 30.625% sharing percentage of the carried interest due to him in connection with the entire CNS Investment, the entire SMU Investment, the entire SABA/MUA Investment, and the entire SMU-SABA/MUA Consolidation, pursuant to the terms of the Limited Partnership and Operating Agreements constitute a breach of the fiduciary duties that Durfee is owed pursuant to the Limited Partnership and Operating Agreements.

163.    By reason of the foregoing breaches and anticipatory breaches of the fiduciary duties owed Durfee under the Operating Agreements, Durfee has been damaged by being denied certain

benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

WHEREFORE, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)     Compensatory and consequential damages in an amount to be determined at trial;

(b)     Punitive damages;

(c)     Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)     Such other relief as the Court may deem just, equitable and proper.

### SEVENTH CAUSE OF ACTION
**(Breach of Fiduciary Duty as to**
**Limited Partnership Interests)**

164.    Plaintiff repeats and realleges, with full force and validity, each and every allegation as set forth above in this Complaint as if set forth at length herein.

165.    Rodger, as the controlling person at the Entity Defendants, owed Durfee fiduciary duties while he was a limited partner in the Parent Fund and SBIC Fund.

166.    Rodger's improper actions to limit the Parent Fund's and SBIC Fund's ability to invest in the SMU Investment and the EIC Investment and exclude the Parent Fund and SBIC Fund from further investing in the SMU-SABA/MUA Consolidation constitute a breach of the fiduciary duties that Durfee is owed pursuant to the Limited Partnership Agreements.

167.    Rodger's breach of the fiduciary duties he owed pursuant to the Limited Partnership Agreements greatly diminished the return on investment realized by all of the limited partners in the Parent Fund and SBIC Fund, including Durfee.

168.    By reason of the foregoing breaches and anticipatory breaches of the fiduciary duties owed Durfee under the Limited Partnership Agreements, Durfee has been damaged by being denied

certain benefits and compensation due him, in an amount to be determined at trial, but believed to be well in excess of $75,000.

**WHEREFORE**, Plaintiff Mark F. Durfee demands Judgment against Defendants for:

(a)     Compensatory and consequential damages in an amount to be determined at trial;

(b)     Punitive damages;

(c)     Reasonable costs and attorneys' fees, together with pre-judgment interest; and

(d)     Such other relief as the Court may deem just, equitable and proper.

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-1075
(973) 993-8100
Attorneys for Plaintiff,
Mark F. Durfee

By: ____/s/ THOMAS P. SCRIVO_____

Date:   June 13, 2008                            Thomas P. Scrivo

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

Pursuant to Local Civil Rule 11.2, it is hereby stated that the matter in controversy is not the subject of any other action pending in any other court or of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated and no other parties need to be joined in the above action.

MCELROY,   DEUTSCH,   MULVANEY   &
CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-1075
(973) 993-8100
Attorneys for Plaintiff,
Mark F. Durfee


By: ___/s/ THOMAS P. SCRIVO_____

Date:   June 13, 2008                         Thomas P. Scrivo